Brent J. Goodfellow, OSB #033277
Amanda S. Marshall, OSB #953473
1215 N.W. Adams Street
McMinnville, OR 97128
Phone:  (503) 472-9555
FAX:    (503) 472-9550
bgoodfellow@johnstone-law.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| R.M., individually and as parent and next best friend of M.W., a minor child,<br><br>    Plaintiffs,<br><br>v.<br><br>CHAD CAMERON CAMP, and AMERICAN AIRLINES, INC., a Delaware Corporation,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT AND JURY DEMAND (Personal Injury)**<br><br>**PRAYER: In excess of $10,000,000.00 or an amount to be proven and awarded at trial** |

COMES NOW, Plaintiff, R.M. individually and as a parent and next best friend of M.W., a minor child, and hereby sets forth the following causes of action and damages against Defendants, Chad Cameron Camp and American Airlines, Inc.:

## NATURE OF THE ACTION

This is a personal injury action brought against Defendants Chad Cameron Camp ("Camp") and American Airlines, Inc., ("American").

## PARTIES

1.    Plaintiff, R.M., individually and on behalf of M.W., is a resident of Clackamas County, Oregon.

2.    Plaintiff R.M. is the natural and legal parent and guardian and next best friend of M.W., a minor child.

3.    Plaintiffs R.M. and M.W. are natural persons whose identities, for the purpose of public filings, is protected information because, *inter alia*, M.W. is a minor child and a victim of Camp's crime, and M.W.'s parents relate that the federal prosecutor handling the criminal case against Chad Cameron Camp have maintained the confidentiality of M.W.'s identity in order to help assure her protection and that revelation of her name or that of her parents could prejudice or harm her, at least until the criminal case against Camp is completed.  Therefore, Plaintiffs designate their legal names as protected and confidential information.  Signature of Plaintiffs' counsel below is certification of the foregoing.

4.    Defendant Camp is, on information and belief, a citizen of the State of Oregon, County of Clackamas.

5.    Defendant American is a foreign corporation that has a continuous and systematic presence in Oregon for the purpose of doing business in Oregon.  On information and belief, American is incorporated in Delaware with its principal place of business located in the State of Texas.

6.    American maintains a business presence and an office in Portland, Multnomah County, Oregon.

7.    This matter concerns torts committed by Defendants that caused injury and harm to Plaintiffs while M.W. was on an American flight from Dallas, Texas to Portland, Oregon on June 15, 2016 (the "flight").

///

///

PAGE **2**- COMPLAINT

## JURISDICTION AND VENUE

8.      Plaintiffs invoke diversity jurisdiction as the amount in controversy exceeds $75,000 exclusive of interest and costs and since Plaintiffs are residence of Oregon and Defendant American's principal place of business is in a different state and is not a resident of the State of Oregon.

9.      Pursuant to 28 U.S. Code § 1391, venue is proper in this Court because Defendant American, is subject to personal jurisdiction in this Court.

10.     Defendants are subject to personal jurisdiction in this Court because, *inter alia*, the acts and omissions committed by them occurred pursuant to an interstate flight that included, Portland, Oregon and the harm was suffered within the jurisdiction of this Court.

11.     This Court has proper personal and subject matter jurisdiction over this matter.

## FACTUAL ALLEGATIONS

12.     On the evening of June 15, 2016, M.W. was on an American Airlines flight with service from Dallas, Texas to Portland, Oregon.

13.     Beginning in fall of 2014, American required all persons between the ages of five (5) and fourteen (14) to purchase an "unaccompanied minor" ticket.  Prior to 2014, American only required persons between the ages of five (5) and twelve (12) to pay for and purchase this ticket.  As part of the cost of M.W.'s ticket, M.W.'s father was also required to pay this "unaccompanied minor" fee for M.W., who is age 13.  The fee for this service is $150.00 each way or $300.00 total.  This fee is on top of the regular cost of the ticket.

14.     M.W. was introduced to the flight crew as an unaccompanied minor approximately an hour before the flight took off by another American employee, which was to serve as a fail-safe of sorts.  For an unknown reason, the flight was delayed approximately an

hour.  During this delay, M.W. was the only one on the airplane except for the American flight crew and employees.

15.    American seated M.W. in row 21 next to the window.  Camp was seated in row 21 directly next to M.W.

16.    Approximately half of the airplane's seats were available and empty, including the aisle seat, one seat from Camp and two seats from M.W.

17.    Directly prior to the flight beginning, an American flight attendant asked Camp if he would like to move to the aisle or another row.  Camp said, "No. I'm fine."  The flight attendant did not require Camp to move or offer M.W. the opportunity to move.

18.    Within the hour before the scheduled flight, Camp was seen drinking four (4) mixed drinks.  Upon his entrance onto the aircraft, he was mumbling to himself.  The first word out of his mouth when seated next to M.W. was "fu**."

19.    Almost immediately, and without intervention from American, Camp began to rub up against M.W., lean close to her and fondle her body with his hand.  This groping eventually progressed to Camp touching her upper and lower leg and finally to her crotch.

20.    This horrendous set of events lasted approximately thirty (30) minutes without American's intervention.

21.    Camp was finally demanded to move from the seat directly next to M.W. to the back of the airplane when a flight attendant serving snacks saw Camp with his hand in M.W.'s crotch and a tear falling from her cheek, although he initially refused to leave the row.

22.    M.W. was also finally moved to the first rows of the airplane directly behind first class.  The pilot initiated the "fasten seatbelt" sign for the duration of the flight after the FBI was notified.

## FIRST CAUSE OF ACTION

### (Battery)

23.     By this reference, Plaintiffs replead, restate and reallege paragraphs 1 through 22 of this Complaint and each and every other allegation of this Complaint, including those allegations preceding and those allegations following this paragraph of the Complaint, and incorporates the same as though fully set forth herein.

24.     Camp was a passenger on the flight.

25.     During the flight, Camp intended to, and did, exercise force to inflict a harmful and/or offensive contact upon the body of M.W.

26.     Camp committed various acts of battery against M.W. on numerous occasions during the flight and caused M.W. extreme fear and psychological, emotional and mental trauma.

27.     In particular, Camp committed various acts of sexual abuse against M.W. during the flight.

28.     As a direct, actual and proximate cause of Defendant's intentional acts of battery, Plaintiffs have suffered injury and harm.

29.     As a direct, actual and proximate cause of Defendant's intentional acts of battery Plaintiff, M.W., has suffered the following damages:

    a.  Past medical, psychological and counseling services expenses;

    b.  Future medical, psychological and counseling services expenses;

    c.  Past physical, emotional and mental pain and suffering;

    d.  Future emotional, mental pain and suffering;

    e.  Past loss of function of full mind and body;

    f.  Future loss of function of full mind and body; and

g. Loss of earning capacity.

30.     As a direct, actual and proximate cause of Defendant's intentional acts of battery, Plaintiff R.M. has suffered the following damages:

    a. Past expenses for and in relation to medical, psychological and counseling services incurred by one or more of M.W. and/or R.M., including, without limitation, medical charges and transportation expense.

    b. Future expenses for and in relation to medical, psychological and counseling services incurred by one or more of M.W. and/or R.M., including, without limitation, medical charges and transportation expense.

    c. R.M.'s loss of services, companionship and society resulting from the injury and harm to her daughter, M.W.

    d. Travel and incidental expenses incurred in relation to the prosecution of Camp.

31.     Camp's acts of battery were intentional, constituting a willful and wanton disregard for the rights or safety of M.W. and were so directed at M.W. so as to entitle M.W. to an award of punitive damages from American in relation to the incidents described above.

32.     American is directly, vicariously and/or jointly and severally liable for the acts of Camp against Plaintiffs and for the harm and damages suffered by Plaintiffs.

WHEREFORE, Plaintiff R.M., individually and as a parent and next best friend of M.W., prays for judgment of compensatory damages against Chad Cameron Camp and American Airlines, Inc., jointly and severally, for all injuries and damages sustained by Plaintiffs and M.W., as well as punitive damages, attorneys' fees, the costs of litigation and pre-judgment interest and for such further and additional relief as the Court deems just and proper.

///

## SECOND CAUSE OF ACTION

### (Negligence versus American)

33.     By this reference, Plaintiffs replead, restate and reallege paragraphs 1 through 32 of this Complaint and each and every other allegation of this Complaint, including those allegations preceding and those allegations following this paragraph of the Complaint, and incorporates the same as though fully set forth herein.

34.     Defendant American owed Plaintiffs various duties of care.

35.     Defendant American breached the duties of care that they owed to Plaintiffs.

36.     Defendant American was entrusted with and voluntarily undertook care, custody, control, and supervision of M.W., a minor child, such that American stood *in loco parentis* over M.W.

37.     American promised that it would provide for M.W.'s safety during the flight and.

38.     Upon information and belief, American, for pay or otherwise, voluntarily undertook to escort Plaintiff to the airplane and transfer Plaintiff to the care and custody of the American flight crew.

39.     American knew M.W. as an unaccompanied minor and failed in its duty to provide Plaintiff the requisite care to protect M.W. from the harms alleged herein.   M.W. was introduced to the flight crew as an unaccompanied minor approximately an hour before the flight took off and its failure to adhere to the standard of care was a contributing factor to Plaintiffs' injuries and damages as alleged herein.

40.     American owed Plaintiffs at least a duty to exercise due care to provide for the safety, supervision and care of M.W.

41.     American owed Plaintiffs the highest duty of care to provide for the safety, supervision and care of M.W., a minor child, such as M.W., especially a child in the care and custody of the airline, as M.W. was, is owed a higher duty of care than any other person on the flight, particularly compared to American's high duty of care owed to adults.

42.     American breached those duties of care and failed to provide a reasonable or adequate level of supervision, care or safety for M.W.

43.     As a direct result of American's failure to provide proper supervision, safety or care for M.W., Camp was allowed by American to move into the seat next to M.W.'s and repeatedly violate her body, space and privacy, including committing multiple separate criminal acts of sexual abuse against M.W, despite Camp being noticeably impaired when he boarded the aircraft and his history of abusing illegal substances.

44.     American left M.W. unsupervised and unmonitored for such a long period of time that Camp was permitted by American to commit several acts of sexual abuse upon the minor child, M.W., as well as intimidate M.W. and trap her against the airplane window.

45.     American had a duty to seat M.W. in a location where she could be easily and frequently observed, supervised and monitored.

46.     American breached that duty by placing M.W. in a window seat near the middle of the plane away from where the flight crew could observe, supervise or monitor her with the level of frequency needed in order to reasonably assure M.W.'s safety.

47.     If M.W. had been seated closer to the flight attendants, on an aisle, with proper obvious identification, and/or a list of other proper steps, then unless the flight attendants were asleep, M.W. would have been better supervised and more able to seek help when the batteries

committed by Camp first commenced. But, because she was not located near the flight attendants and afforded proper safeguards, M.W. was unable to safely or quickly obtain help.

48.     American had a number of seats available all over the aircraft, including closer to flight attendants. An American employee asked Camp if he wanted to change seats from the seat he took right next to M.W. Camp responded, "I'm fine." Despite this being a red flag, American did not require Camp to move, or offer M.W. to move and did not provide a safer seat to M.W. near first-class or at least the front or rear of the airplane because American was more interested in profits than ensuring the safety of the minor child it undertook to protect, even after charging an "unaccompanied minor" fee of $150.00 each way on top of the regularly ticketed price.

49.     In the midst of Camp committing his horrendous crimes against M.W., and finally after approximately thirty (30) minutes of these acts occurring over and over, American moved M.W. into a safe and appropriate seat located near first class and near where the flight attendants could supervise, protect and monitor Plaintiff. M.W. should have been seated in that or a comparably safe seat from the get-go before the sexual assault could be committed against her.

50.     Defendant American, knew or should have known that sexual abuse aboard flights within the United States had been increasing since 2013 and that further and additional precautions were necessary, particularly to protect minor children.

51.     It was foreseeable to American, and they knew or should have known, that if proper and adequate precautions were not taken by them then M.W. would be exposed to an unreasonable risk of injury at the hands of another passenger, including Camp and including of the type of injury that M.W. has suffered in this case. For example, in a Complaint filed in the United States District Court for the Southern District of Iowa, *R.D. and S.H. , individually and*

*as parent and next best friend of C.D., a minor child v. Muhammad Asif Chaudhry and American Airlines, Inc., Case No. 4:15-cv-00303*, Plaintiffs allege substantially similar facts, acts and omissions against American.

52.     American knew or should have known that they failed to protect, supervise or monitor M.W. to provide a reasonable level of safety and protection to M.W.

53.     During the flight, American provided M.W. with no supervision, monitoring or enhanced level of safety different or apart from what it gave any adult passenger.  In essence, American completely abdicated and breached the duties that it owed to M.W. and her parents.

54.     If American had not breached its duties of care, Camp would not have been in a position to commit, and would not have been able to commit, the various acts of abuse and battery, including sexual abuse against the minor child, M.W.

55.     Due to the sexual abuse that American negligently permitted to occur to M.W., M.W. has suffered direct and extreme psychological, emotional and mental trauma and injury of a permanent nature.  Said injuries have required, and will continue to require, mental and psychological counseling for M.W., as well as her parents, and have exposed M.W. to the unreasonable risk of further future harm, including leaving her statistically susceptible to being a victim of sex crimes in the future, a decline in academic performance and, ultimately, employability and decreased enjoyment of life, among plethora other very real hazards incident to the simple fact that as a young child, M.W. has suffered sexual abuse.

56.     Camp's abuse of M.W., as permitted and caused by American has caused a severe interruption and damage to the relationship that M.W. has with others, including particularly that relationship which M.W. had and would, in the absence of American's negligence, continued to have had with M.W.'s parents.

57.     Moreover, not only did American fail to exercise the requisite level of care, but American instead exercised willful indifference to the health, safety and welfare of M.W.

58.     American's conduct in failing to supervise, monitor or provide any reasonable level of safety for M.W., a minor child, was intentional and/or reckless.

59.     As a direct, actual and proximate cause of Defendant's various acts of negligence and breaches of its duties of care, Plaintiffs, and each of them, have suffered injury and harm.

60.     As a direct, actual and proximate cause of Defendant American's various acts of negligence and breaches of their duties of care, Plaintiff, M.W., has suffered the following damages:

   a.   Past medical, psychological and counseling services expenses;

   b.   Future medical, psychological and counseling services expenses;

   c.   Past physical, emotional and mental pain and suffering;

   d.   Future emotional, mental pain and suffering;

   e.   Past loss of function of full mind and body;

   f.   Future loss of function of full mind and body; and

   g.   Loss of earning capacity.

61.     As a direct, actual and proximate cause of Defendant American's various acts of negligence and breaches of its duties of care, Plaintiff R.M. has suffered the following damages:

   a.   Past expenses for and in relation to medical, psychological and counseling services incurred by one or more of M.W. and/or R.M., including, without limitation, medical charges and transportation expense.

    b.  Future expenses for and in relation to medical, psychological and counseling services incurred by one or more of M.W. and/or R.M., including, without limitation, medical charges and transportation expense.

    c.  R.M.'s loss of services, companionship and society resulting from the injury and harm to her daughter, M.W.

    d.  Travel and incidental expenses incurred in relation to the prosecution of Camp.

62.    As a direct and proximate cause of Defendant American's negligence, Plaintiffs have suffered injury and harm and are entitled to damages from American to compensate them for those injuries and harm.

63.    American intentionally committed acts and/or omissions of an unreasonable character in disregard of a known or obvious risk that is so great as to make it highly probable that harm will follow.

64.    American's reckless indifference to M.W.'s health, safety and welfare rose to the level of willful and wanton disregard for the rights or safety of M.W. and was so directed at M.W. so as to entitle M.W. to an award of punitive damages from American in relation to the incidents described above.

65.    American is vicariously liable for its acts and omission as heretofore alleged, as well as the injuries harm and damage caused by that negligence.

WHEREFORE, Plaintiff R.M. individually and as a parent and next best friend of M.W., prays for judgment of compensatory damages against American Airlines, Inc., for all injuries and damages sustained by Plaintiffs, as well as attorney's fees, the costs of litigation and pre-judgment interest and for such further and additional relief as the Court deems just and proper, along with punitive damages against Defendant, American Airlines, Inc.

## THIRD CAUSE OF ACTION

### (Common Carrier Liability versus American)

66.    By this reference, Plaintiffs replead, restate and reallege paragraphs 1 through 65 of this Complaint and each and every other allegation of this Complaint, including those allegations preceding and those allegations following this paragraph of the Complaint, and incorporates the same as though fully set forth herein.

67.    Under Oregon law, any company which transports passengers for a fee must exercise more than ordinary care to protect them, and has a duty both to anticipate any possible danger and to guard against it.  This high degree of care stops just short of guaranteeing a passenger's safety.

68.    American transports passengers for a fee and M.W. paid a fee to travel on American airlines.

69.    For all of the reasons set forth in the Second Cause of Action above, as well as those reasons which will be shown at trial, American failed to anticipate and/or guard against the danger that M.W. would suffer unreasonable risk of danger of physical and/or mental injury and/or that Camp would commit battery against M.W.

70.    For all of the reasons set forth in the Second Cause of Action above, as well as those reasons which will be shown at trial, American failed to exercise a high degree of care towards M.W. and in fact failed to exercise even reasonable care towards M.W.

71.    As a direct, actual and proximate cause of Defendant American's failure to exercise the requisite level of care, Plaintiffs, and each of them, have suffered injury and harm.

72.    As a direct, actual and proximate cause of Defendant American's failure to exercise the requisite level of care, Plaintiff, M.W., has suffered the following damages:

   a.  Past medical, psychological and counseling services expenses;

   b.  Future medical, psychological and counseling services expenses;

   c.  Past physical, emotional and mental pain and suffering;

   d.  Future emotional, mental pain and suffering;

   e.  Past loss of function of full mind and body;

   f.  Future loss of function of full mind and body; and

   g.  Loss of earning capacity.

73.    As a direct, actual and proximate cause of Defendant American's failure to exercise the requisite level of care, Plaintiff R.M. has suffered the following damages:

   a.  Past expenses for and in relation to medical, psychological and counseling services incurred by one or more of M.W. and/or R.M., including, without limitation, medical charges and transportation expense.

   b.  Future expenses for and in relation to medical, psychological and counseling services incurred by one or more of M.W. and/or R.M., including, without limitation, medical charges and transportation expense.

   c.  R.M.'s loss of services, companionship and society resulting from the injury and harm to her daughter, M.W.

   d.  Travel and incidental expenses incurred in relation to the prosecution of Camp.

74.    As a direct and proximate cause of Defendant American's negligence, Plaintiffs have suffered injury and harm and are entitled to damages from American to compensate them for those injuries and harm.

75.    Furthermore, American's reckless indifference to M.W.'s health, safety and welfare rises to the level of willful and wanton disregard for the rights or safety of M.W. and was

so directed at M.W. so as to entitle M.W. to an award of punitive damages from American in relation to the incidents described above.

WHEREFORE, Plaintiff R.M. individually and as a parent and next best friend of M.W., prays for judgment of compensatory damages against American Airlines, Inc., for all injuries and damages sustained by Plaintiffs and M.W., as well as attorneys' fees, the costs of litigation and pre-judgment interest and for such further and additional relief as the Court deems just and proper, along with punitive damages against Defendant, American Airlines, Inc.

### JURY DEMAND

COMES NOW, Plaintiff R.M. as parent and next best friend of M.W., and hereby demands trial by jury on all issues and to determine all damages raised herein.

JOHNSTONE & GOODFELLOW

By:/s/ Brent J. Goodfellow
Brent J. Goodfellow, OSB #033277
Amanda Marshall, OSB #9534732101
1215 N.W. Adams Street
McMinnville, OR 97128
Phone: (503) 472-9555
FAX:   (503) 472-9550
bgoodfellow@johnstone-law.com
Attorneys for Plaintiff