IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

R.M., as parent and next best friend
of M.W., a minor child,

        Plaintiff,

    v.

AMERICAN AIRLINES, INC., a
Delaware corporation,

        Defendant/Third-Party Plaintiff,

    v.

CHAD CAMERON CAMP, an individual,

        Third-Party Defendant.

No. 3:16-cv-01366-HZ

OPINION & ORDER

Brent J. Goodfellow
JOHNSTONE & GOODFELLOW
1215 NW Adams
McMinnville, OR 97128

Judy Danelle Snyder
LAW OFFICES OF JUDY SNYDER
1000 SW Broadway, Suite 2400
Portland, OR 97205

      Attorneys for Plaintiff

Steven O. Rosen
Lisa E. Lear
THE ROSEN LAW FIRM, P.C.
1000 SW Broadway, Suite 1220
Portland, OR 97205

      Attorneys for Defendant/Third-Party Plaintiff

Gordon L. Welborn
Stephanie C. Kucera
HART WAGNER, LLP
439 SW Umatilla Avenue
Redmond, OR 87756

      Attorneys for Third-Party Defendant

HERNÁNDEZ, District Judge:

Plaintiff R.M. as a parent and next best friend of M.W., a minor child, brings this action for negligence and common carrier liability against Defendant American Airlines, Inc. Defendant American Airlines also brings a claim for contribution against Third-Party Defendant Chad Cameron Camp. Currently pending before this Court are Plaintiff's Motion to Strike the Third-Party Claim and Dismiss Third-Party Defendant Camp and Defendant American Airlines' Motion for Summary Judgment. For the reasons that follow, the Court grants Defendant American Airlines' Motion for Summary Judgment and denies as moot Plaintiff's Motion to Strike.

## BACKGROUND

M.W. ("Plaintiff") is a minor child and was a passenger on a June 15, 2016 flight from Dallas, TX, to Portland, OR, operated by Defendant American Airlines ("Defendant"). As a minor child flying alone, M.W. qualified as an unaccompanied minor or "UNMR." Defendant American Airline's employees are advised that they are responsible for ensuring the safe travel of UNMRs until they reach their destination. Snyder Decl. Ex. 6 ("McMahan Dep.") 45:1–15;

46:12–23; 47:5–16, ECF 86; *id.* at Ex. 27, 29, 30. Its Customer Policy for UNMRs—included in the training for flight attendants and the inflight manual used by flight attendants—specifies that flight attendants should pay extra attention to the UNMR's and "ensure their well being and safe travel." *Id.* at Ex. 30. During their training, flight attendants are instructed to ensure that any UNMR is comfortable with where they are seated and who they are seated next to. Snyder Decl. Ex. 12 ("Smith Dep.") 16:19–18:4. Flight Attendants may reseat the UNMR within the cabin if needed. *Id.* at Ex. 30.

An American Airlines' employee assigned Plaintiff her seat on the Dallas to Portland flight when she checked in for the first part of her trip in San Antonio, TX. Shaffer Decl. ¶ 6, ECF 80. Plaintiff was assigned window-seat 21A. *Id.* Third-Party Defendant Chad Camp ("Defendant Camp") was assigned middle-seat 21B on the same flight. *Id.* at ¶ 7. The aisle seat next to Defendant Camp—as well as several other seats on that flight—were vacant. Snyder Decl. Ex. 5 ("Kuykendall Dep.") at 77:24–78:4, 116:6–9.

After boarding was complete, a flight attendant informed Defendant Camp that he could move to the vacant aisle seat next to him if he wanted to have more space. Snyder Decl. Ex. 10 ("Price Dep.") 63:9–6; Snyder Decl. Ex. 28. Defendant Camp declined. *Id.* Plaintiff was not given an opportunity to change her seat. Price Dep. 64:24–65:1. Despite the instructions given in the preflight safety video, a flight attendant also had to instruct Defendant Camp to put his tray table up and stow his bag under the seat in front of him. *Id.* at 59:7–60:23; Snyder Decl. Ex. 28 at 1. The flight attendants testified that there was nothing unusual or extraordinary about Defendant Camp. Price Dep. 58:1–16; Snyder Decl. Ex. 4 ("Kirklin Dep.") 16:14–24. They also testified that he did not appear to be under the influence of intoxicants. *See* Kuykendall Dep. 116:3–5; Price Dep. 58:12–19; Kirklin Dep. 41:11–15, 50:2–6

As required by Defendant American Airlines' policies, the flight attendants took their seats prior to take off. Kukyendall Dep. 39:23–40:13. Once the airplane reached 10,000 feet, the captain signaled to the flight attendants that they could get up from their seats. *Id.*; Kirklin Dep. 45:2–46:1; Shaffer Decl. Ex. 6. Flight attendant Caroline Warmath then began distributing snacks to the passengers. Kuykendall Dep. 41:14:42–9. When she reached row 21, she observed Defendant Camp's hand on Plaintiff's lap in her "groin" or "crotch" area. *Id.* at 13:24–14:22; Snyder Decl. Exs. 24, 26. Ms. Warmath immediately demanded Defendant Camp remove his hand, moved Defendant Camp to the rear of the plane, and notified lead flight attendant Anna Kirklin. Kuykendall Dep. 43:16–44:21; Price Dep. 73:8–74:23. Two "able-bodied men" were moved to the back of the aircraft to monitor Defendant Camp. Lear Decl. Ex. 12 ("Strader Dep.") 22:12–14, ECF 79; Kuykendall Dep. 57:12–20; Price Dep. 75:25–76:8. Ms. Warmath also moved Plaintiff to a seat between two women in row eight, the second row behind first class. Snyder Decl. Ex 15 ("M.W. Dep.") 54:1–14. After both were moved, the captain notified dispatch of the incident. Strader Dep. 25:11–13. At the time the message was sent to dispatch, radar shows that the aircraft was over Texas airspace and had been throughout the entire incident. Starkey Decl. ¶¶ 3–6, Ex. 1.

Defendant American Airlines arranged to have law enforcement meet the flight at the gate when it arrived in Portland. Lear Decl. ("Rodriguez Dep.") 33:6–9; Snyder Decl. Ex. 21. After M.W. was escorted off the airplane to meet her stepfather, Rodriguez Dep. 34:15–19, 35:17–19, Defendant Camp was removed from the airplane by police, Kirklin Dep. 39:19–21; Rodriguez Dep. 36:5–7.

As a result of his conduct, Defendant Camp was charged with several crimes and ultimately pled guilty to both Assault with Intent to Commit Sexual Contact of a Minor and

Indecent Sexual Proposal to a Minor. Lear Decl. Ex. 6 at 1. Despite pleading guilty, Defendant

Camp testified at his deposition that he had no recollection of committing the assault. Lear Decl.

Ex. 15 ("Camp Dep.") 63:13–18.

Plaintiff alleges that she has suffered physical, mental, and emotional injuries because of

this incident. Am. Compl. ¶ 49, ECF 4. During the duration of the flight to Portland, she was

afraid to leave her seat to use the restroom. M.W. Dep. 56:15–23. Days later, she was still in

shock and "mentally . . . not okay." *Id.* at 58:14–59:10. Her mother similarly testified that in the

days following the flight Plaintiff suffered bouts of crying and was shocked, sad, and angry.

Snyder Decl. Ex. 8 ("R.M. Dep.") 158:2–159:9. She was then quiet and withdrawn for a few

weeks. *Id.* After moving to Montana in August of 2016, she underwent counseling and was

diagnosed with Adjustment Disorder with Anxiety. *Id.* at 70:1–72:21; Snyder Decl. Ex. 3

("Holloway Dep.") 30:18–24, 32:1–9; Lear Decl. Ex. 4 (Pl. Resp. Def. Interrog. 16). She was

called names and blamed for what happened to her by her classmates. M.W. Dep. 63:15–65:18.

For a month in the fall following the assault, she came home crying from school every day. R.M.

Dep. 174:4–15. For some time, Plaintiff blamed herself for what happened. M.W. Dep. 92:25–

93:11.

After the assault, Plaintiff also began avoiding young men. She is afraid of men in their

twenties and never wants to fly alone again. *Id.* at 68:8–23, 69:17–24. She confirms there are no

older male siblings at friend's homes before sleeping over. *Id.* at 77:25–78:5. Once a month,

events trigger memories of the assault, such as seeing a man Defendant Camp's age or hearing

people talk about flying alone. *Id.* at 92:13–24. She is uncomfortable walking down the street,

worries about what others could do to her, and feels the need to avoid men. *Id.* at 61:15–66:21;

Snyder Decl. Ex. 20. Her mother testified that Plaintiff is visibly anxious and will get jumpy

when she is around men in public places. R.M. Dep. 127:2–128:19. Plaintiff also alleges that Defendant's negligence caused her "extreme psychological, emotional and mental trauma and injury of a permanent nature" and has exposed her to an increased risk of future harms including decreased employability, academic performance, and other hazards. Am. Compl. ¶ 44.

Plaintiff also provides evidence of other sexual assaults that occurred on various airlines in the years prior to the assault in this case. A 2013 news article describes an assault on a Delta flight by a pilot—traveling as a passenger—against an UNMR seated in a window seat. Lloyd Decl. Ex. 3, ECF 85. Two other articles describe five incidents of assault in 2013 and 2014, at least one of which involved an UNMR. *Id.* at Exs. 4–5. The 2014 NBC article also reports that "[s]everal other men have been charged with sexual assault against strangers on airplanes . . . since 2012." *Id.* at Ex. 5 at 3. In 2015, a negligence suit was filed against American Airlines in Iowa for injuries a UNMR sustained when sexually assaulted on an American Airlines flight. *Id.* at Ex. 7. The news articles also broadly state that sexual assaults on commercial flights were on the rise but note no federal agency keeps statistics regarding the frequency of these crimes on airlines. *Id.* at Exs. 4–5. In 2014, the "Protecting Airlines Passengers from Sexual Assaults Act" was introduced into the U.S. House of Representatives. *Id.* at Ex. 6. The bill would have required the FAA to maintain statistics on the number of sexual assaults that occur on commercial flights and was introduced in response to the recent increase in reports of sexual assault on airlines in the United States. *Id.*

On July 5, 2016, R.M. filed this case on behalf of the minor Plaintiff bringing claims for negligence against Defendant American Airlines and battery against Defendant Camp. Compl., ECF 1. After the Court informed Plaintiff that it lacked subject matter jurisdiction because the parties were not completely diverse, Plaintiff filed her First Amended Complaint dropping the

claims against Defendant Camp and bringing claims solely against Defendant American Airlines. Order to Show Cause, ECF 3; First Amended Complaint, ECF 4. Defendant American Airlines then filed its Amended Answer and Third-Party Complaint against Defendant Camp. Am. Answer, ECF 11. Defendant American Airlines seeks contribution from Defendant Camp for any damages awarded against Defendant American Airlines for Defendant Camp's conduct. *Id.*

Prior to the end of discovery, Plaintiff moved to strike Defendant American Airline's third-party claim and dismiss Defendant Camp. Pl. Mot. Strike, ECF 63. Defendant Camp joins in that motion. Mot Joinder, ECF 64. After the close of discovery, the parties stipulated to dismissing R.M—Plaintiff's mother—as party to this suit, Stip. Notice Dismissal, ECF 77, and Defendant American Airlines moved for summary judgment on all of Plaintiff's claim against it, Def. Mot. Summ. J., ECF 78. Oral argument was held on August 13, 2018.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the

pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper.").

## DISCUSSION

In both motions currently pending before this Court, the parties disagree as to whether Texas or Oregon law applies to the disputed issues in this case. Plaintiff moves to strike the third-party claims against Defendant Camp because Oregon law does not allow the trier of fact to compare the fault of intentional and negligent tortfeasors. Defendant moves for summary judgment on Plaintiff's negligence claim, arguing that under Texas law it owes no duty to Plaintiff to protect her from the criminal acts of third parties. Defendant also argues that Texas law bars Plaintiff from recovering punitive damages against it for the criminal conduct of

Defendant Camp. Because the Court agrees with Defendant that Texas law applies to this case, the Court grants Defendant's Motion for Summary Judgment, dismisses Plaintiff's claims with prejudice, and denies as moot Plaintiff's Motion to Strike.[1]

## I.      Choice of Law Analysis

Plaintiff argues that Oregon law applies to this dispute because Plaintiff was domiciled in Oregon at the time of the accident and she suffered most of her alleged injuries while in Oregon and Montana. Defendant, by contrast, argues that Texas law applies because Defendant is domiciled in Texas, the injurious conduct occurred over Texas airspace, and Plaintiff suffered at least some of her injury in Texas. This Court agrees with Defendant.

Federal courts sitting in diversity look to the forum state's choice of law rules to determine the controlling substantive law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). As of January 1, 2010, Oregon courts follow a statutory choice of law methodology. Or. Rev. Stat. ("ORS") 15.300–460. As Plaintiff brings a claim for negligence against Defendant, Oregon's choice of law methodology for torts and other noncontractual claims is applicable to this case. ORS 15.400–460 (formerly ORS 31.850–890). The statute first provides general rules for preliminary issues such as the characterization of the substantive claims, localization and other factual determinations necessary for the choice of law analysis, and rules for determining the domicile of the relevant parties. *See* ORS 15.410–420. Section 14.430 provides that certain claims—including actions in which no party raises the issue of foreign law

---

[1] In her response to Defendant's Motion for Summary Judgment, Plaintiff also objects to the deposition testimony offered by Defendant because it cites to pages of testimony rather than specific pages and line numbers. Pl. Opp'n 1. The Court notes that Defendant has failed to cite to page and line numbers in the deposition testimony as required by Oregon local rules. See LR 56-1(a) ("A party's factual positions must be supported by citations, by page and line as appropriate, to the particular parts of materials in the record."). The Court declines, however, to exclude this evidence on these grounds because Defendant's citations are otherwise sufficient for the Court to review the cited support for Defendant's factual assertions.

and certain actions against a public body of the State of Oregon—are presumptively governed by

Oregon law. Section 15.435 describes special choice of law rules for products liability actions.

The general choice of law methodology for tort claims is detailed in Sections 15.440 and

15.445. This methodology combines the certainty of the traditional *lex loci* approach with the

flexibility of more modern approaches to choice of law issues. *See* Oregon Law Commission,

*Choice of Law for Torts and Other Non-Contractual Claims: Report and Comments* 5 (2009)

(hereinafter "OLC").[2] Section 15.440—the general approach—ties the applicable law to the

location of the injury, the location of the injurious conduct, and the domicile of the parties. With

some exceptions, if both the injured party and the injury-causing party are domiciled in the same

state, the law of that state governs. ORS 15.440(2)(a). Where the parties are domiciled in

different states, the applicable law depends on the locations of the injury and the injurious

conduct. If both the injury and the injurious conduct occur in the same state and one of the

parties is domiciled in that state, the law of that state governs. *Id.* at (3)(a). If both the injury and

the injurious conduct occurred in a state in which neither party is domiciled, the law of the state

of injury and conduct governs unless either party demonstrates that the objectives of the law of

that state on the disputed issue will not be served by its application. *Id.* at (3)(b). Finally, where

neither party is domiciled in the same state and the injurious conduct and injury occurred in

different states, the law of the state of conduct governs unless it was both (1) foreseeable that the

conduct would cause an injury in the state of injury and (2) "the injured person formally requests

the application of that state's law in a pleading."  *Id.* at (3)(c). By contrast, Section 15.445—the

residual approach—looks to the interests of the states with relevant contacts, the policies

---

[2] This commentary was provided by the Oregon Law Commission in compliance with ORS
14.460 ("The Oregon Law Commission shall make available on the website maintained by the
commission a copy of the commentary approved by the commission for the provisions of ORS
15.400 to 15.460.").

embodied by their interests, and the strength of those policies. Where the disputed issue involves the rights and liabilities between two or more persons liable on the same claim, the residual approach applies. ORS 14.450.

Oregon and Texas law conflict on the issues of Defendant's liability and the availability of punitive damages. Under Oregon law, where a special relationship exists between the injured party and the tortfeasor, the tortfeasor has a duty to protect against risks of foreseeable harms "including the risk of harm from third-party criminal acts." *Piazza v. Kellim*, 360 Or. 58, 72–73, 377 P.3d 492, 501 (2016). Texas courts, by comparison, presume that a negligent tortfeasor has no duty to protect others from the criminal acts of third parties unless the criminal act is foreseeable. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998). And while foreseeability is a question for the jury in Oregon, whether a duty exists is a question of law for the court to decide under Texas law. *Compare id.* ("Whether a duty exists is a question of law for the court to decide.") *with Piazza*, 360 Or. at 69–70 (Under Oregon law, "[t]he concept of foreseeability embodies a prospective judgment about a course of events; it therefore ordinarily depends on the facts of a concrete situation and, if disputed, is a jury question."). In addition, "exemplary" or punitive damages are not recoverable under Texas law where the alleged damages are caused by the criminal acts of a third party, but Oregon has no such bar to the recovery of punitive damages. *Compare Healthcare Centers of Texas, Inc. v. Rigby*, 97 S.W.3d 610 617–18 (Tex. App. 2002) (holding that Texas law "bans punitive damages for the criminal conduct of another") *with Jane Doe 130 v. Archdiocese of Portland in Oregon*, 717 F.Supp.2d 1120, at 1140 (D. Or. 2010) (finding that under Oregon law "where the evidentiary record supports findings of both negligence and the additional factors of aggravated misconduct

requisite for award of punitive damages, a punitive damages award may lie in connection with a negligence claim").

This case does not present any claim presumptively governed by Oregon law under ORS 15.420 and is not a products liability action under ORS 15.430. The Court therefore proceeds to the general choice of law rules described in ORS 15.440. Plaintiff—the injured person—was a domiciliary of Oregon at the time the facts underlying this action arose, and Defendant—the person whose conduct caused the injury—is domiciled in Texas. Because the parties are domiciled in different states, this case is governed by ORS 15.440(3). Both parties agree that the injurious conduct took place in Texas. *See* Pl. Opp'n 10. Thus, which law applies in this case depends on the location of the injury. *See* ORS 15.440(3)(a)–(c).

Section 15.415 provides that "[i]f the same conduct causes injury in more than one state, the place of injury is in the state in which most of the injurious effects occurred or may occur." In this case, Defendant's alleged negligence caused Plaintiff's injury in more than one state. The injurious touching occurred over Texas where the assault took place. Her emotional injury also began in Texas, and she continued to experience fear and distress throughout the flight. Plaintiff experienced emotional distress after the flight during the few months she resided in Oregon. She was shocked immediately after the assault and "mentally, . . . was not okay." She was also withdrawn, sad, angry, and experienced bouts of crying. But the bulk of the injurious effects, based on the evidence Plaintiff provided and Plaintiff's allegations in the complaint, occurred after Plaintiff moved from Oregon to Montana in August of 2016. There, Plaintiff participated in counseling for her emotional distress. She was bullied at school: her classmates referred to her as the "girl who got molested on the plane," blamed her for what happened, and called her a "slut." She exhibited hypervigilance around men. That fall, she came home crying every day from

school. Plaintiff seeks damages in her complaint for "direct and extreme psychological, emotional and mental trauma and injury of a *permanent* nature." Am. Compl. ¶ 44 (emphasis added). Given the evidence provided by Plaintiff, the Court finds that either Texas—where the injurious touching occurred and her emotional injury began—or Montana—where Plaintiff appears to have suffered and continues to suffer the bulk of her emotional distress—is the place of injury as defined in ORS § 15.415.

If Texas is the state of injury, the Court looks to ORS 15.440(3)(a) because the injurious conduct and the injury both occurred in Texas. *See* ORS 15.440(3)(a) ("If both the injurious conduct and the resulting injury occurred in the same state, the law of that state governs if either the injured person or the person whose conduct caused the injury was domiciled in that state."). Under this section, Texas law applies because Defendant is a domiciliary of Texas. If Montana is the state of injury, the Court turns to ORS 15.440(3)(c) because the injury and injurious conduct occurred in different states. *See* ORS 15.440(3)(c) ("If the injuries conduct occurred in one state and the resulting injury in another state, the law of the state of conduct governs."). Under this section, the law of the state of conduct—Texas—applies. Consequently, under either section Texas law governs this dispute.

Plaintiff argues that under exception described in ORS 15.440(3)(c), which permits the Court to apply the law of the state of injury, Oregon law applies to this case. This Court disagrees. First, as described above, the Court is unpersuaded that the state of injury is Oregon. Plaintiff only resided in Oregon for a few months after the assault and much of her emotional distress occurred and continues to occur in Montana. Second, even if Oregon is the state of injury, the Court is not convinced that the occurrence of the injury in Oregon was foreseeable in the sense required by ORS 15.440(3)(c)(A). As stated by the Oregon Law Commission,

foreseeability is an objective—rather than a subjective—standard. OLC, *supra*, at 25. In this context, "'foreseeable' should be understood in a 'spatial' sense and should not be confused with the foreseeability of substantive tort law." *Id.* Thus, "[t]he pertinent question here is not whether one should have foreseen the occurrence of the injury, but whether one should have foreseen that the injury would occur *in the particular state in which the injury did occur*." *Id.* (emphasis in original). As an illustration of this definition, the Oregon Law Commission notes that "one who operates a factory in close proximity to the border with another state should foresee that any harmful emissions from the factory may cause injury in the other state because the wind may blow in that direction." *Id.*

Here, the evidence does not show that Defendant should have foreseen that Plaintiff's injury would occur in Oregon. Unlike the individual who owns a factory abutting a state border and knows his negligence could impact that state, Defendant could not have anticipated that its negligent acts would result in injury in Oregon specifically. Indeed, an assault on its aircraft could have injurious consequences in any place in the world, and its occurrence in Oregon was happenstance. Thus, the injury in Oregon was not foreseeable to Defendant in the sense required by ORS 15.440(c)(3)(A), and the law of the state of conduct governs this dispute.

## II.     Motion for Summary Judgment

Defendant argues that it is entitled to summary judgment on Plaintiff's negligence claim because, under Texas law, it did not owe a duty to Plaintiff to prevent the criminal conduct of Defendant Camp. In the alternative, it argues that even if the Court finds that Defendant owed Plaintiff a duty, Plaintiff cannot recover punitive damages against Defendant for the criminal conduct of a third-party. This Court agrees. [3]

---

[3] In its motion, Defendant also asks the Court to dismiss Plaintiff's claim for "common carrier liability" as it is not a separate cause of action but a heightened standard of care applicable to

A.  Negligence for Third-Party Criminal Conduct

Under Texas law, a plaintiff must prove four elements to succeed on a claim for negligence: "(1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages (4) proximately caused by the breach." *Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 461 (Tex. App. 2008) (citing *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)).  "The threshold inquiry in a negligence case is duty." *Id.* at 462. Except where "it involves the resolution of disputed facts or inferences which are inappropriate for legal resolution," *Mitchell v. Missouri-Kansas-Texas R. Co.*, 786 S.W.2d 659, 662 (Tex. 1990), *overruled on other grounds by Union Pac. R. Co. v. Williams*, 85 S.W.3d 162 (Tex. 2002), "[t]he existence of duty is a question of law for a court to decide from the facts surrounding the occurrence in question," *Barton*, 276 S.W.3d at 462; *see also Union Pac. R. Co.*, 85 S.W.3d at 169  ("When the evidence about foreseeability as it relates to [a] duty is disputed, the trial court should instruct the jury about this element so it can resolve the factual issue.").

Generally, "common carriers 'are held to a higher standard of care when transporting passengers.'" *Garren v. Cunningham*, No. 05-16-00455-CV, 2017 WL 1360229, at *5 (Tex. App. Apr. 13, 2017) (quoting *Speed Boat Leasing, Inc. v.* Elmer, 124 S.W.3d 210, 212 (Tex. 2003)).  However, "[a]s a rule a person has no legal duty to protect another from the criminal acts of a third person." *Timberwalk Apartments,* 972 S.W.2d at 756 (internal citations and quotations omitted). The court will only impose a duty on a defendant—including a common carrier—where "a criminal's conduct is a foreseeable result of the prior negligence of a party."

---

negligence claims. Plaintiff does not dispute that common carrier liability is not a separate cause of action but, instead, asks the Court to construe the complaint as pleading alternate theories of liability. Were this case to proceed to trial, the Court would construe Plaintiff's complaint as bringing a single negligence claim against Defendant and allow Plaintiff to request jury instructions for both standards of care. However, as discussed below, the Court finds that, regardless of the applicable standard of care, Plaintiff cannot sustain her claim under Texas law.

*Barton*, 276 S.W.3d at 462; *see also Garren*, 2017 WL 1360229, at *5 (noting that "[i]n focusing on the standard of care of a common carrier, appellants overlook the rule that before imposing a duty of care, the risk of harm must be foreseeable"); *Dozier v. AMR Corp.*, No. 2-09-186-CV, 2010 WL 3075633, at *4 (Tex. App. Aug. 5, 2010) (finding the plaintiff failed to provide evidence that her sexual assault on a commercial flight was foreseeable). Texas courts "have described foreseeability as the foremost and dominant consideration in the duty analysis." *Texas Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 36 (Tex. 2002) (internal quotations omitted).

"Foreseeability exists if the actor, as a person of ordinary intelligence, should have anticipated the dangers his negligent act creates for others." *Barton*, 276 S.W.3d at 463 (citing *D. Houston*, 92 S.W.3d at 454). In other words, the plaintiff has to show "both that the defendant committed negligent acts and that it knew or should have known that, because of its acts, the crime (or one like it) might occur." *Id.* at 462. "Foreseeability requires only that the general danger, not the exact sequence of events that produced them, be foreseeable." *Timberwalk*, 972 S.W.2d at 756. Where criminal conduct is foreseeable, "the defendant has a duty to prevent injuries to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured." *Midkiff v. Hines*, 866 S.W.2d 328, 332 (Tex. App. 1993).[4]

Though the Texas Supreme Court has yet to address the foreseeability of criminal conduct with regard to the duty of care owed by common carriers, it has provided a set of factors to aid courts in determining the foreseeability of criminal conduct by property owners. *See Timberwalk*, 972 S.W.2d at 756–59. These factors are primarily spatial or temporal in nature and

---

[4] Even where criminal conduct is foreseeable, Texas courts only impose a duty where the risk of harm is unreasonable or the "risk of a foreseeable crime outweighs the burden placed on property owners—and society at large—to prevent the risk." *U.D.R. Tex. Props., L.P.*, 517 S.W.3d 98, 103 (Tex. 2017).

require courts to look to the "proximity, recency, frequency, similarity and publicity" of other criminal conduct. *U.D.R. Tex. Props., L.P. v. Petrie*, 517 S.W.3d 98, 102 (Tex. 2017).

At least one Texas appellate court has used these factors to analyze the foreseeability of criminal conduct in a case involving a common carrier. In *Garren v. Cunningham*, passengers sued Greyhound Lines and its bus driver for negligence when a fellow passenger attacked the bus driver, grabbed the steering wheel, and caused the bus to crash. 2017 WL 1360229, at *1–4. There, the passenger who caused the accident was under the influence of methamphetamine and had been acting strangely, exhibiting signs of paranoia and anger. *Id*. At least one passenger reported his strange behavior to the bus driver. *Id.* at *2–3. The plaintiffs also provided evidence of news articles regarding two similar attacks on Greyhound bus drivers. *Id*. at *4.

The court concluded that "there [was] no probative evidence that [the bus driver] should have reasonably foreseen the criminal act of" the passenger. *Id.* at *8. First, citing the *Timberwalk* factors, the court noted that Greyhound was aware of previous attacks on bus drivers by passengers, but found that the two incidents in the record—occurring eleven years earlier— were too temporally remote and factually dissimilar to make the attack foreseeable. *Id.* at *7. Second, it looked to the other evidence in the record to determine whether the behavior preceding the attack made the passenger's conduct foreseeable. *Id.* at *8. While there was evidence that the bus driver had notice of the passenger's disruptive behavior, the evidence did not suggest that anyone perceived him to be an imminent threat or hostile. *Id.* The plaintiffs also argued that because Greyhound was a common carrier it owed them a heightened duty of care that encompassed the duty to prevent the kind of violence perpetrated in that case. *Id.* at *5. The Texas appellate court acknowledged this heightened duty of care for common carriers but

explained that even before imposing such a duty the court must determine whether the harm associated with a criminal act was foreseeable. *Id.*

Plaintiff in this case contends she "has adduced evidence which demonstrates that criminal assaults against unaccompanied minors by other passengers was reasonably foreseeable." Pl. Opp'n 22. She specifically refers to other incidents where passengers, including unaccompanied minors, were sexually assaulted on commercial flights between 2013 and 2015, "widely publicized" online news articles regarding sexual assaults, and the introduction of H.R. 4295—a bill called the "Protecting Airline Passengers from Sexual Assaults Act of 2014"—in the U.S. House of Representatives. *Id.* She also suggests that the assault was the foreseeable result of Defendant's alleged negligence because (1) Plaintiff was seated in a window seat in the middle of the plane next to a male passenger, (2) Defendant Camp refused to move to an open seat, and (3) Defendant Camp did not follow the flight attendant's safety instructions. *Id.* at 23.

The Court disagrees. Plaintiff has not demonstrated that under the circumstances presented in this case the assault was foreseeable. The flight attendants testified that there was nothing out of the ordinary about Defendant Camp. He did not appear intoxicated, hostile, or otherwise dangerous. Neither Defendant Camp's failure to stow his tray table and bag nor his decision to remain in the middle seat suggest that Defendant Camp might harm Plaintiff. *Cf. Garren*, 2017 WL 1360229, at *8 (affirming the trial court's grant of summary judgment where the defendant knew a passenger—who caused the bus to crash—had known behavioral issues but did not clearly pose a threat to anyone's safety). In other words, a person of ordinary intelligence would not have anticipated that the assault was a foreseeable result of Defendant's allegedly negligent act of seating Plaintiff next to Defendant Camp in a window seat near the middle of the plane.

Plaintiff's additional evidence concerning other sexual assaults on commercial flights is similarly unavailing. Though the publicity of this issue suggests that Defendant had notice that these crimes occurred on airlines, the evidence provided by Plaintiff is sparse. While the other incidents of criminal conduct are less remote than those in *Garren*, which occurred eleven years prior to accident in that case, the evidence provided specifically describes only seven assaults among different airlines over a three-year period. *See* Lloyd Decl. Exs. 3–5, 7. Three of the incidents in the record involved sexual assault against UNMRs. *Id.* The other assaults were committed against adult women or are discussed in general terms. *Id.* Further, the House Bill and the news articles are vague and state, without any reasonable certainty, that sexual assault on airplanes was on the rise in 2014, two years prior to the incident in this case. *See id.* at Ex. 6, 5 (noting a "recent surge of cases"). Though undeniably a serious issue for airlines today, the Court cannot conclude that this evidence makes the sexual assault of an UNMR by Defendant foreseeable under Texas law. *Cf. Jenkins v. C.R.E.S. Mgmt., LLC*, 811 F.3d 753, 758 (5th Cir. 2016) (finding that there was an issue of fact as to whether a shooting in an apartment complex was foreseeable where the defendant knew of fourteen residential burglaries, seven aggravated assaults, one sexual assault, and one robbery-shooting on the complex's premises in the two years prior to the crime). Accordingly, the Court finds that the Defendant did not owe a duty to Plaintiff to prevent the criminal conduct of Defendant Camp and dismisses Plaintiff's negligence claim with prejudice.

B.  Availability of Punitive Damages for Third-Party Criminal Conduct

Defendant also argues that, under Texas law, Plaintiff is barred from recovering punitive damages. The Texas Civil Practice and Remedies Code generally provides that "[i]n an action arising from harm resulting from an assault, theft, or other criminal act, a court may not award

exemplary damages against a defendant because of the criminal act of another." Tex. Civ. Prac.

& Rem. Code § 41.005(a). The statute provides an exception for cases where:

(1) the criminal act was committed by an employee of the defendant;
(2) the defendant is criminally responsible as a party to the criminal act under the provisions of Chapter 7, Penal Code;
(3) the criminal act occurred at a location where, at the time of the criminal act, the defendant was maintaining a common nuisance under the provisions of Chapter 125, Civil Practice and Remedies Code, and had not made reasonable attempts to abate the nuisance; or
(4) the criminal act resulted from the defendant's intentional or knowing violation of a statutory duty under Subchapter D, Chapter 92, Property Code, and the criminal act occurred after the statutory deadline for compliance with that duty.

*Id.* at § 41.005(b). Thus, in the absence of any of these exceptions, "Section 41.005(a) bans

punitive damages for the criminal conduct of another." *Healthcare Ctrs. of Tex. Inc. v. Rigby*, 97

S.W.3d 610, 618 (Tex. App. 2002); *see also In re Jacobs*, 300 S.W.3d 35, 49–50 (Tex. App.

2009) (noting that under § 41.005 "a defendant could no longer be exposed to punitive damages

because of another person's criminal act"); *Miles v. Jerry Kidd Oil Co.,* 363 S.W.3d, 823, 826–

27 (Tex. App. 2012) ("We construe Section 41.005 to preclude punishing a defendant for harm

resulting from a criminal act of a third party when that defendant's actions are a concurrent cause

of the harm."); *In re Islamorada Fish Co. Texas*, *L.L.C.*, 319 S.W.3d 908, 911–13 (Tex. App.

2010); *Wilson v. K.W.G., Inc*., No. 11-03-00084-CV, 2004 WL 1925599, at *1–2 (Tex. App.

Aug. 31, 2004).

     Plaintiff argues that Defendant's reliance on § 41.005 is misplaced because the damages

in this case arise out of Defendant's own "reckless and outrageous indifference to a foreseeable

risk of harm to unaccompanied minors" rather than Defendant Camp's criminal touching. Pl.

Opp'n 27. The Texas Court of Appeals addressed a similar argument in *Healthcare Centers of

Texas Inc. v. Rigby* and came to the opposite conclusion. In that case, a resident of a healthcare

center attempted to sexually assault another resident. [5] 97 S.W.3d at 614. The jury found both the

healthcare facility and its medical director negligently and maliciously caused harm to the

plaintiff and awarded punitive damages. *Id.* at 617. The appellate court, however, found that the

punitive damages award was barred by § 41.005, which it concluded "bans punitive damages for

the criminal conduct of another." *Id.* at 618. There, like here, the plaintiff argued that the

punitive damages were awarded against the defendants because of their malice, not the criminal

act of the other resident. *Id.* at 618–20. The Court rejected this argument and found that the

plaintiff was barred from recovering punitive damages despite the finding of malice because the

injury was "indivisible" between the defendants and the other resident and the plaintiff admitted

that the harm resulted from the criminal act of the resident. *Id.* at 618.

     The Court declines to depart from the Texas court's interpretation of the statute. As none

of the exceptions apply here, and Plaintiff alleges that the harm in this case arises from a criminal

act by Defendant Camp, First Am. Compl. ¶¶ 44–45,[6] the Court finds that exemplary damages

are unavailable.

///

///

---

[5] Plaintiff admits that, under the reasoning of *Healthcare Centers*, "plaintiff would be precluded from obtaining punitive damages." Pl. Opp'n 29.

[6] Paragraphs 44 and 45 read: "Due to the sexual abuse that American negligently permitted to occur to M.W., M.W. has suffered direct and extreme psychological emotional and mental trauma and injury of a permanent nature. Said injuries have required, and will continue to require, mental and psychological counseling for M.W., as well as her parents, and have exposed M.W. to the unreasonable risk of further future harm, including leaving her statistically susceptible to being a victim of sex crimes in the future, a decline in academic performance and, ultimately, employability and decreased enjoyment of life, among plethora other very real hazards incident to the simple fact that as a young child, M.W. has suffered sexual abuse.

    Camp's abuse of M.W., as permitted and caused by American has caused a severe interruption and damage to the relationship that M.W. has with others, including particularly that relationship which M.W. had and would, in the absence of American's negligence, continued to have had with M.W.'s parents."

**CONCLUSION**

Based on the foregoing, the Court GRANTS Defendant American Airlines' Motion for Summary Judgment [78] and DENIES AS MOOT Plaintiff's Motion to Strike [63] [64]. The parties shall submit a joint proposed judgment within fourteen days of this Order.

IT IS SO ORDERED.

Dated this _____5_____ day of September, 2018.


MARCO A. HERNÁNDEZ
United States District Judge